IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| IN THE MATTER OF ) | |
| MEDIATION IN ) | Misc. Case No. 3:17-mc-4 |
| HEALTH DIAGNOSTIC, ) | |
| LABORATORY, INC. CASES ) | |
| ) | |
| _____ ) | |

## **MEMORANDUM OPINION**

This matter comes before the Court on reconsideration from the District Court. (ECF No. 60.) For the reasons set forth herein, the Court reaffirms the imposition of sanctions upon the Liquidating Trustee pursuant to its November 9, 2017 Order. (ECF No. 50.) The Court further reduces the attorneys' fees of the Bouton and Cornwell Defendants pursuant to the lodestar analysis as more fully explained below.

## I.  **BACKGROUND**

On September 16, 2016, the Liquidating Trustee filed a complex 76-count Omnibus Complaint on behalf of the creditors of Health Diagnostic Laboratory, Inc. ("HDL") against over 100 defendants and claiming approximately $600 million in damages. The crux of the Complaint avers that HDL and its independent contractor BlueWave Healthcare Consultants, Inc. ("BlueWave") engaged in several illegal sales practices that ultimately harmed its creditors. The defendants range in scope from HDL's officers, directors, and shareholders all the way down to the individual medical salespeople who sold HDL's products — some of whom made very small profits that likely add up to less than a day of attorneys' fees in this case. The Liquidating Trustee's blunderbuss approach applies not only to the sheer volume of defendants and their various levels of culpability, but also to the many causes of action against those

defendants regardless of ultimate viability.

Even though a realistic settlement of this entire case will likely recover only a small portion of the alleged losses, the attorneys' fees continue to mount well into the millions of dollars each month, thereby reducing the ultimate recovery to HDL's creditors. Indeed, in 2017, the Liquidating Trust paid attorneys well over $11 million. Bankr. Case No. 15-32919 (ECF Nos. 1942, 3298, 3497, 3687.) With discovery continuing well into 2019 and thousands of open adversary proceedings still pending, lawyers will continue to chip away at the funds available to HDL's creditors. Recognizing the importance of prompt resolution to maximize recovery for the creditors, the District Court referred this case to the undersigned early in the process for mediation. ("Referral Order" (ECF No. 1).)

Settlement of any case requires an evaluation of the merits of the claim — a particularly difficult task here due to the broad and undetailed Complaint levied by the Liquidating Trustee. With respect to the over twenty individual salespeople and their entities at issue here (the Bouton and Cornwell Defendants), the task proves even more difficult because they fall "downstream" of the core allegations in the Complaint. These salespeople did not make up the HDL corporate board nor were they leaders at BlueWave. Instead, they simply constitute the sales force who marketed HDL's products. Even though the Liquidating Trustee has sued each of these salespeople in his or her individual capacity, the Liquidating Trustee lumps them all together in his Complaint as the "BlueWave Sales Representative Defendants" with no distinction. Although these broad generalities may satisfy pleading requirements in the Bankruptcy Court, this does not provide the undersigned sufficient specifics with respect to each individual's potential liability to facilitate meaningful mediation. For that reason, the Court ordered the Liquidating Trustee to provide a settlement memorandum outlining the factual and legal

2

underpinnings of his claims against each independent sales defendant. ("August 9 Order" (ECF No. 12).) The Order specifically provides that the "Liquidating Trustee shall prepare a separate memorandum for each of these [] Defendant groups, but the Liquidating Trustee shall provide distinct factual allegations and accompanying support as to each individual Defendant within each group." *Id.* The purpose of this Order was not to provide the Bouton and Cornwell Defendants with early discovery, but to give the undersigned adequate specifics to evaluate the case for settlement against each individual.

On October 30, 2017, the Liquidating Trustee submitted one memorandum purportedly encompassing the Bouton and Cornwell Defendants. The Court thereafter ordered the parties to file pleadings as to whether the Liquidating Trustee had actually complied with the August 9 Order. [1] ("November 1 Order" (ECF No. 38).) After oral argument and by Order dated November 9, 2017, this Court found that the Liquidating Trustee failed to comply with the August 9 Order, because he did not provide "distinct factual allegations and accompanying support as to *each individual Defendant*." ("Sanctions Order" (ECF No. 50).) Instead, the Liquidating Trustee's memorandum contained a generalized discussion of his claims against "all the defendants" with references to some general emails and other documents.

---

[1] On October 31, 2017, counsel for Defendants sent *ex parte* communications to chambers for the undersigned, complaining that the Liquidating Trustee's memorandum did not fully comply with the August 9 Order. Although settlement discussions by their very nature involve *ex parte* communications, such communications are not appropriate for challenging the validity and meaning of court orders. And because settlement communications are confidential, the undersigned could not share the *ex parte* communications with the Liquidating Trustee. As such and in an abundance of caution, this Court ordered the Defendants to file their objections to the Liquidating Trustee's memorandum, so that the Liquidating Trustee could have a fair chance to respond. To be clear, the Defendants did not raise issues in their *ex parte* communications that were not later raised and more fully developed in their briefs and at oral argument. Nothing in the *ex parte* communications impacted this Court's decision to issue sanctions, and the Liquidating Trustee's focus on those communications lacks merit.

Contrary to the Liquidating Trustee's assertions, the Court's conclusion that he did not comply had nothing to do with formatting. In fact, the undersigned specifically told the Liquidating Trustee that the Court's concern did not lie with the technical deficiencies in his memorandum. *See* Tr. at 34:14-15 (ECF No. 55 Ex. 1.) Instead, the Court explained that the Liquidating Trustee's violation struck at the very heart of the substance, because he failed to break down his theory person by person, so that the Court could assess the merits with respect to each individual defendant. For example, the Liquidating Trustee mentioned two Defendants, Seneca Garrett and Courtney Love, only once in his memorandum with no factual specifics to link them to any of his many legal theories. The memorandum simply described Ms. Garrett as "a Cobalt sales representative," and Ms. Love as an "assistant [] who sells ancillary services to doctors." The memorandum mentioned several other Defendants only two or three times, again with no factual specifics. These bare references give the Court no clue as to the strengths of the Liquidating Trustee's fraud, tortious interference, conspiracy or unjust enrichment claims against these particular defendants.[2] And the Liquidating Trustee's broad allegations that "*each* of the Defendants perpetuated the P&H Scheme" or that "*each* of the Defendants received commissions for their participation in the P&H Scheme" do not satisfy the Court's request for specifics as to each individual. (ECF No. 44, at 3-4.). The August 9 Order specifically directed the Liquidating Trustee to provide factual specifics for each defendant, and he unquestionably failed to do so.

Because the Liquidating Trustee's memorandum would not aid the mediation process, the Court rescheduled the settlement conference with the Bouton and Cornwell Defendants. The Court further ordered the Liquidating Trustee to submit another memorandum specifically

---

[2]     The Liquidating Trustee's refusal to delve into the substance of his case has created an obstacle for settlement throughout the mediation process. Unfortunately, without more substance and factual specifics, this Court cannot meets its responsibility to the District Court and make progress towards settlement.

4

breaking down each individual defendant and giving the legal theories and facts supporting those theories. As a sanction for the Liquidating Trustee's failure to comply with the August 9 Order, the Court required the Trustee to pay reasonable fees and costs incurred by the Bouton and Cornwell Defendants solely on the issue of whether the Liquidating Trustee violated the Order.

The Liquidating Trustee filed objections to the Sanctions Order. (ECF No. 55.) On November 29, 2017, the District Court referred the matter back to the undersigned for a "re-evaluation of whether sanctions should be imposed, based upon the quality of the (new) submission. If the Magistrate Judge determines that sanctions remain appropriate, the Magistrate should specifically indicate the legal basis for his imposition of sanctions." (ECF No. 60.) Additionally, the District Court directed the undersigned to "consider the extent, if any, to which he should adjust the sanctions award based on (1) the lodestar factors enumerated in *Johnson v. Georgia Hwy Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), and (2) the issues raised in the Liquidating Trustee's objection concerning the scope of Defendants' Statements of Fees and Costs." The District Court took the Liquidating Trustee's Objections under advisement pending the undersigned's determination.

In light of the District Court's Order, the undersigned issued a new scheduling order that directed the Bouton and Cornwell Defendants to file a response to the Liquidating Trustee's argument on the reasonableness of their fees and costs and whether they complied with the specific instructions to limit their fees and costs solely to the Liquidating Trustee's failure to comply with the August 9 Order. (ECF No. 63.) In addition, the Court ordered the Bouton and Cornwell Defendants to address whether the Court should reduce the sanctions in light of the Liquidating Trustee's revised submission. The Bouton and Cornwell Defendants have submitted their responses and the Liquidating Trustee filed a reply, rendering this matter ripe for decision.

## II. ANALYSIS

### A. Legal Authority for Imposing Sanctions

Federal Rule of Civil Procedure 16 governs general case management and pretrial conferences, including settlement conferences, and is designed to be "broadly remedial," giving courts the authority to actively manage their dockets from an early stage in the litigation. *In re Baker,* 744 F.2d 1438, 1440 (10th Cir.1984) *(en banc); G. Heilman Brewing Co. v. Joseph Oat Corp.,* 871 F.2d 648, 652 (7th Cir. 1989). Rule 16(a)(5) authorizes the court to direct the parties and attorneys to attend one or more pretrial conferences for the purpose of "facilitating settlement." In furtherance of this purpose, the District Court referred this case for mediation to the undersigned and specifically conferred the authority to "enter any orders necessary in furtherance of his settlement efforts." (Referral Order.)

Pursuant to Rule 16 and the District Court's Referral Order, this Court issued a specific pretrial order on August 9, 2017 with which the Liquidating Trustee failed to comply. Rule 16(f) expressly authorizes sanctions if a party or his attorney "fails to obey a scheduling or other pretrial order." Courts have continuously held that this includes sanctions for failure to abide by an order issued for settlement purposes. *G. Heilman Brewing Co.,* 871 F.2d at 656; *Empire, Inc. v. Wal-Mart Stores, Inc.,* 188 F.R.D. 478, 482 (E.D. Ky. 1999); *Dvorak v. Shibata,* 123 F.R.D. 608, 611 (D. Neb. 1988); *Nick v. Morgan Foods, Inc.,* 99 F. Supp. 2d 1056, 1063 (E.D. Mo. 2000); *MHD-Rockland Inc. v. Aerospace Distrib. Inc.,* 102 F. Supp. 3d 734, 738-39 (D. Md. 2015); *Reliance Nat'l Ins. Co. v. B. Von Paris & Sons., Inc.,* 153 F. Supp. 2d 808, 810 (D. Md. 2001); *CLM Partners LLC v. Fiesta Palms LLC,* No. 2:11cv01387, 2013 WL 6388760, at *3-4 (D. Nev. Dec. 5, 2013).

Rule 16(f)(2) provides that "[i]nstead of or in addition to any other sanction, the court

must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances made an award of expenses unjust." After giving the Liquidating Trustee notice and an opportunity to be heard on whether he complied with the August 9 Order, this Court found that his noncompliance warranted the sanctions contemplated by Rule 16(f).[3]

### B.    Re-evaluation in Light of the Liquidating Trustee's Revised Memorandum

This Court ordered the Liquidating Trustee to deliver a new memorandum in compliance with its August 9 Order — *i.e.*, a memorandum containing a separate discussion of each cause of action against each individual defendant, along with the factual and legal underpinnings to support it. (Sanctions Order.)  On December 21, 2017, the Liquidating Trustee delivered his new submission in six large binders broken down into 27 individual defendants in descending order of how much money those defendants made from HDL.  For each individual defendant, the Liquidating Trustee included a chart breaking down the various causes of action along with the purported legal and factual underpinnings to support them.

The Cornwell and Bouton Defendants argue that the Liquidating Trustee's new submission does not cure the defect that resulted in the Sanctions Order.  They complain that the Liquidating Trustee has offered no evidence with respect to harm caused to 23 of the 26 creditors and that the allegations against the individual defendants remain broad and generalized with respect to the various causes of action.  Although the Court wholeheartedly agrees that the

---

[3]     Rule 16(f) does not require a specific finding of willful disobedience on the part of the Liquidating Trustee. *See, e.g., Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.,* 275 F.3d 762, 769 (9th Cir.2001) (holding sanctions may be imposed under Rule 16(f) when disobedience of order is unintentional); *Empire,* 188 F.R.D. at 480 (holding it unnecessary for a court to find bad faith when issuing sanctions under Rule 16(f)).

Liquidating Trustee's asserts, at best, bare-boned claims against some of the individual defendants, the new submission permits the Court to do its job and evaluate the merits and conduct a meaningful mediation. The Court therefore finds that the Liquidating Trustee's submission substantially complies with the instructions outlined in its Sanctions Order.

Despite the Liquidating Trustee's compliance, this Court reaffirms its previous decision to issue sanctions pursuant to Rule 16 and the District Court's Referral Order as outlined above. The Liquidating Trustee's compliance today does not cure the time and money spent by the Bouton and Cornwell Defendants briefing his noncompliance in November. The Court made its expectations clear in the August 9 Order as to what the Liquidating Trustee's memorandum should include, and the Liquidating Trustee violated that Order by failing to give specifics with respect to most of the individual defendants. This violation resulted in a substantial loss of time by both the parties and this Court.

Moreover, the Court is very disappointed to see that the Liquidating Trustee has not dismissed some of the individual defendants even after expressly asserting that dismissal would be appropriate with respect to some of them. Tr. 23:5-23:8 (ECF No. 55 Ex. 1) ("We don't want somebody who received $100,000 in commissions who now is making $50,000, and has no equity in their house to be part of this case. They can be dismissed.") Although the Court now understands that the Liquidating Trustee's theory may technically encompass all of these defendants, it strikes the Court that there is little particularized evidence with respect to several of them. And for individual defendants like Kristen Dukes — who made at most $11,000 from HDL sales — the costs of litigating this case against a Liquidating Trust with seemingly endless litigation resources are overwhelming. This is particularly troublesome when the litigation costs to the Liquidating Trust in bringing this action against individual defendants like Dukes will far

surpass any potential recovery for the creditors. In referring this case to the undersigned, the District Court sought to avoid this exact type of wasteful litigation. As such, this Court finds that the sanction should stand.

### C.     Reasonableness of Fees

The District Court directed the undersigned to "consider the extent, if any, to which he should adjust the sanctions award based on (1) the lodestar factors enumerated in *Johnson v. Georgia Hwy Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and (2) the issues raised in the Liquidating Trustee's objection concerning the scope of Defendants' Statement of Fees and Costs." Because the Liquidating Trustee's objection as to scope necessarily relates to the lodestar analysis, the Court will consider these two issues in tandem.

### 1.     Legal Standard

In considering the reasonableness of a request for attorneys' fees, the Court calculates the "lodestar" amount by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Stewart v. VCU Health Sys. Auth.*, No. 3:09cv738, 2012 WL 1120755, at *1 (E.D. Va. Apr. 3, 2012) (Hudson, J.) (citing *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009)). In formulating a reasonable fee, courts look to several factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Johnson*, 488 F.2d at 717-19 (adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)); *see Page v. Va. State Bd. Of Elections*, No. 3:13cv678, 2015 WL

11256614, at *2-3 (E.D. Va. March 11, 2015) (explaining that most of the *Johnson* factors have now been subsumed in the initial lodestar analysis). Some factors have nothing to add to a given case, but the court should consider all of those that apply. *In re Abrams & Abrams*, 605 F.3d 238, 243 (4th Cir. 2010). Importantly for purposes of this case, the burden of proving reasonableness rests upon the party seeking fees. *In re Nat'l Heritage Found., Inc.*, No. 09-10525, 2013 WL 3167698, at *19 (Bankr. E.D. Va. June 21, 2013).

## 2.    Determination of a Reasonable Hourly Rate

Counsel for the Bouton Defendants seek to recover attorneys' fees in the amount of $16,173.50, while counsel for the Cornwell Defendants seek $9,740.00. Specifically, the Bouton Defendants request reimbursement for 20.5 hours billed by lead counsel Miles Dumville at an hourly rate of $725 and 4.6 hours billed by paralegal Donna Lynch at an hourly rate of $285. The Cornwell Defendants seek reimbursement for 14.3 hours billed by lead counsel Dennis Lewandowski at an hourly rate of $400 and 20.1 hours billed by third-year associate Clark Belote at an hourly rate of $200.

The Liquidating Trustee does not challenge the reasonableness of the hourly rates submitted by counsel for the Cornwell Defendants, and the Court agrees that they appear reasonable. However, the Liquidating Trustee does dispute the hourly rates of both Mr. Dumville and Ms. Lynch for the Bouton Defendants. To show the reasonableness of their hourly rates, the Bouton Defendants must produce specific evidence of the prevailing market rates in the Eastern District of Virginia for the type of work performed, *i.e.*, the "customary rate." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987); *Stewart*, No. 3:09cv738, 2012 WL 1120755, at *2. To meet their burden of demonstrating reasonableness, attorneys typically draw from several sources, including fee awards by courts in comparable cases, affidavits from counsel with similar

qualifications giving their billing rates in similar cases, evidence of fees that the petitioner has received in past cases, or affidavits of other local lawyers familiar with the fee applicant's skill and the type of work done in the community. *Spell,* 824 F.2d at 1402; *Stewart,* No. 3:09cv738, 2012 WL 1120755, at *3. The Bouton Defendants did not submit any of the above-referenced evidence and instead provided a single declaration by Mr. Dumville stating that his rates and those of Ms. Lynch comport with those charged by other Richmond firms for attorneys and paralegals with similar skill and experience in complex business litigation. Although Mr. Dumville's affidavit provides some evidence, it alone cannot establish the reasonableness of the proposed fees. *See Page,* No. 3:13cv678, 2015 WL 11256614, at *5 ("affidavit from lead counsel is insufficient, by itself, to establish the reasonableness of their proposed rates"). Without more evidence that $725 and $285 qualify as reasonable hourly rates for Mr. Dumville and Ms. Lynch, respectively, the Court cannot find that the Bouton Defendants have met their burden of proving reasonableness.

The Court is now in the difficult position of calculating a reasonable hourly rate for Mr. Dumville and Ms. Lynch with little evidence to make that determination. The only benchmarks available from the pleadings, other than Mr. Dumville's own declaration, are the rates of Mr. Lewandowski and Mr. Belote submitted for the same work. Because neither party has offered additional evidence of the prevailing market rates in Richmond for the type of work performed or any cases awarding fees for similar work, the only logical rate for this Court to award Mr. Dumville is the $400 hourly rate of Mr. Lewandowski, who has similar experience to Mr. Dumville and who performed substantially the same work. With respect to Ms. Lynch, the Court agrees with the Liquidating Trustee that without more evidence of the rates charged by paralegals with her expertise, it is appropriate to reduce her hourly rate to $200 to match the rate

11

charged by Mr. Belote, a third-year associate at Kaufman & Canoles.

The Liquidating Trustee also complains that Mr. Dumville could have utilized someone more junior to complete the work, because the "skill required to perform the work" is not necessarily that of a senior attorney with over 40 years of experience in complex business litigation. Even if true, the only junior attorney in Mr. Dumville's firm with knowledge of the case was on paternity leave when this Court ordered briefing and oral argument, and the "time limitations imposed by the circumstances" — an eight-day turnaround to prepare a brief, reply, and prepare for and participate in oral argument — necessarily required Mr. Dumville to do the work himself rather than bring someone unfamiliar with the case up to speed. As such, the Court will not further reduce Mr. Dumville's rates based on this factor.

The irony is not lost on this Court that the hourly rates of counsel for the Liquidating Trustee almost certainly fall as high and likely higher than those submitted by counsel for the Bouton Defendants. Furthermore, the Court recognizes Mr. Dumville's excellent "experience, reputation, and ability" in his field. That said, the burden rests on the Bouton Defendants to demonstrate reasonableness, and the Court finds that they have fallen short in meeting that burden with respect to both Mr. Dumville and Ms. Lynch. Consequently, the Court reduces their hourly rates to the rates of Mr. Lewandowski and Mr. Belote, respectively.

### 3. Determination of a Reasonable Expenditure of Time

Once the reasonable hourly rates have been determined, the parties must demonstrate that counsel expended a reasonable amount of hours performing the required work. *Page*, No. 3:13cv678, 2015 WL 11256614, at *8. As a general matter, the Court finds that the hours expended on this matter — 25.1 hours by the Bouton Defendants and 34.4 hours by the Cornwell Defendants — appear eminently reasonable for the required tasks. The Court ordered counsel to

review the Liquidating Trustee's memorandum, prepare an opening brief and reply, and prepare for and participate in oral argument. Moreover, despite the Liquidating Trustee's attempt to characterize his noncompliance as a straightforward discovery issue, the Court required counsel to present a detailed analysis showing whether the Liquidating Trustee complied with the Court's August 9 Order. That analysis required a thorough examination of the Liquidating Trustee's 21-page memorandum and 56 exhibits to verify that the Liquidating Trustee did not somehow hide the specifics somewhere inside all of that paper (which he did not). The "novelty and difficulty of the questions presented" matches the amount of time spent by counsel for the Bouton and Cornwell Defendants.

Despite the Court's general finding that counsel for the Bouton and Cornwell Defendants expended a reasonable amount of time, the Liquidating Trustee raises valid points that merit discussion, and in some instances, a reduction in time. First, the Court made clear that counsel should submit bills for fees relating solely to the issue of the Liquidating Trustee's compliance with the August 9 Order. The Court did not order briefing and argument on the Liquidating Trustee's compliance until its November 1 Order. In that regard, the Court strikes the time spent by counsel for the Bouton and Cornwell Defendants before November 1, 2017, from their statements of fees and costs. Although the Court understands that an initial review of the Liquidating Trustee's memorandum may have been necessary to bring the Liquidating Trustee's noncompliance to the undersigned's attention, counsel for both the Bouton and Cornwell Defendants spent significant time reviewing the memorandum *after* the November 1 Order and that time should have been sufficient to prepare their pleadings. Striking the hours spent before the November 1 Order is particularly necessary given the improper *ex parte* communications that resulted from those initial reviews. As such, the Court strikes the 2.8 hours billed by Mr.

13

Dumville, the 4.4 hours billed by Mr. Lewandowski, and the 0.1 hours billed by Mr. Belote on October 31, 2017.[4] The Court further strikes an additional thirty minutes from both the Bouton and Cornwell Defendants' statements of fees and costs, because approximately half of the one-hour hearing was spent on issues unrelated to the Liquidating Trustee's compliance, and neither party excluded that time from their billing statements. The Court finds that the remaining hours spent by counsel for both Defendants properly related to the issue of whether the Liquidating Trustee complied with its August 9 Order.[5]

Second, the Court finds it appropriate to cut Mr. Belote's travel time in half, because he did not reduce his billing rate for that time. *See Two Men and a Truck/Internat'l, Inc. v. A Mover Inc.,* 128 F. Supp. 3d 919, 928 (E.D. Va. 2015) ("travel time should be billed at a substantially lower than usual rate"). The Court will therefore strike two of the four hours that Mr. Belote billed for travel to and from the hearing.

Third, the Court finds that Ms. Lynch billed over two hours for work that is secretarial in nature – *i.e.*, filing reply briefs, pulling documents, and preparing hearing notebooks. This Court has ruled that "'purely clerical or secretarial tasks should not be billed at paralegal rates, regardless of who performs them.'" *Karo v. Wachovia Bank, N.A.,* No. 3:09cv575, 2010 WL

---

[4]     The Liquidating Trustee argues that Defendants billed too much time for reviewing his memorandum after the November 1, 2017 Order. The Court disagrees. Defendants necessarily had to spend time reviewing the memorandum to formulate their arguments and make sure that the Liquidating Trustee had not hidden the specifics with respect to each defendant somewhere in the 56 exhibits.

[5]     Even though the hearing lasted one hour, the Bouton Defendants requested fees for 1.6 hours and the Cornwell Defendants requested fees for 1.7 hours for time spent at the hearing. It is understandable that the parties billed for some limited time before and after the hearing, and the Court will not reduce their time by more than the half hour spent during the hearing on other matters. To be clear, the Court only ordered the Cornwell Defendants to attend the hearing on the noncompliance issue, and although the Bouton Defendants did attend the hearing on other matters, Mr. Dumville's co-counsel was responsible for arguing those matters. As a result, any time billed before or after the hearing by counsel for Defendants necessarily relates to the noncompliance issue and remains properly billed here.

3074393, *6 (E.D. Va. Aug. 5, 2010) (Hudson, J.) (quoting *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288 n.10 (1989)).  These clerical fees "are not properly recoverable." *Id.*  As such, the Court strikes the 2.1 hours from Ms. Lynch's billing statements dedicated to those tasks from the Bouton Defendants' statement of fees and costs.

Finally, Ms. Lynch, Mr. Lewandowski, and Mr. Belote all engaged in impermissible block billing — lumping multiple tasks together into the same time entry.  "This Court has repeatedly held that block billing renders it unable to make an adequate determination as to the reasonableness of time spent on individual tasks." *Haught v. Wireless Ctr., Inc.*, No. 3:16cv942, 2017 WL 2193246, *3 (E.D. Va. May 8, 2017) (Hudson, J.).  Courts typically remedy block billing by reducing the fee petitioner's requested fee by 10-20%. *Id.*  Due to the targeted bills in this case, the Court finds it appropriate to reduce by 10% the particular inappropriate entries, rather than the entire fees of the individuals who submitted them. The Court will therefore reduce by 10% Ms. Lynch's 2.5 hour entry on November 3, 2017; Mr. Lewandowski's 3.1 hour entry on November 1, 2017, 3.4 hour entry on November 2, 2017, and 2.5 hour entry on November 3, 2017; and, Mr. Belote's 3.2 hour entry on November 3, 2017, and 0.8 hour entry on November 7, 2017.

### 4.    Lodestar Calculations
The reductions in fees and time yield the following lodestar calculations:

**Bouton Defendants**

|  | Billed Rate | Adjusted Rate | Billed Hours | Adjusted Hours | Adjusted Total |
|---|---|---|---|---|---|
| Dumville | $725 | $400 | 20.5 | 17.2 | $6880 |
| Lynch | $285 | $200 | 4.6 | 2.25 | $450 |
|  |  |  |  | **TOTAL** | **$7330** |

**Cornwell Defendants**

| | Billed Rate | Adjusted Rate | Billed Hours | Adjusted Hours | Adjusted Total |
|---|---|---|---|---|---|
| Lewandowski | $400 | $400 | 14.3 | 9 | $3600 |
| Belote | $200 | $200 | 20.1 | 17.1 | $3420 |
| | | | | **TOTAL** | **$7020** |

### 5.    Other Lodestar Factors

The Court has already considered most of the relevant *Johnson* factors in its analysis. To the extent a court has already considered factors in determining a lodestar fee, the court should not consider them a second time. *Page,* No. 3:13cv678, 2015 WL 11256614, at*2 (citing *Perdue v. Kenny A. ex rel. Winn,* 599 U.S. 542, 553 (2010)); *E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs,* 724 F.3d 561, 570 (4th Cir. 2013). The only relevant factor remaining involves the "results obtained" factor, and since counsel for the Bouton and Cornwell Defendants achieved a favorable result, the Court need not further reduce their fees.

### III.    CONCLUSION

This Court does not issue sanctions lightly or without significant consideration. In fact, this is the first time that the undersigned has issued a sanction in settlement in six years on the bench and after mediating roughly 400 other cases. In this case, however, the Court finds that the Liquidating Trustee's refusal to comply with the August 9 Order by not providing the specific information ordered significantly hindered the settlement process for this extremely complicated case and, therefore, merits a sanction. Furthermore, any similar conduct by any party in the future will result in similar action.

An appropriate Order will accompany this Memorandum Opinion. The Clerk is directed to send a copy of this Memorandum Opinion to United States District Judge Henry E. Hudson,

all counsel of record, and to the Clerk of the Bankruptcy Court.

It is so ORDERED.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: January 23, 2018